1 | Scott C. Clarkson, Esq. (CA Bar No. 143271)
Eve A. Marsella, Esq. (CA Bar No. 165797)
2 | Israel Saperstein, Esq. (CA Bar No. 084471)
**Clarkson, Gore & Marsella, APLC**
3 | 3424 Carson Street, Suite 350
Torrance, California  90503
4 | Telephone: 310/542-0111
Facsimile:  310/214-7254
5 | Email: sclarkson@lawcgm.com

6 | Attorneys for Debtor and Debtor in Possession
MTI Technology Corporation

7

8

# UNITED STATES BANKRUPTCY COURT

9

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10

| | |
|---|---|
| In re: | Case No. 8:07-bk-13347-ES |
| MTI TECHNOLOGY CORPORATION, A Delaware corporation, | Chapter 11 |
| Debtor and Debtor in Possession | Adv. No. _____ <br> (Refer to Summons) |
| Federal Tax I.D. # 95-3601802 | **COMPLAINT FOR:** |
| | **(1) Avoidance and Recovery of Preferential Transfers (11 USC §§ 547, 550, 551)** |
| MTI TECHNOLOGY CORPORATION, A Delaware corporation | **(2) Disallowance of All or Part of Proof of Claim No. 111 filed by EMC Corporation; (11 USC § 502)** |
| Plaintiff, | **(3) Breach of Written Contract and Common Counts to collect Money Due on Unpaid invoices submitted to EMC Corporation by MTI Technology Corporation;** |
| vs. | |
| EMC CORPORATION, A Massachusetts corporation | **(4) Breach of Written and Oral Finder's Fee Agreement and Unjust Enrichment;** |
| Defendant. | **(5)  Turnover of Property of the Estate and Money Had and Received, Specifically to Recover Prepaid Funds of MTI Held by EMC as an Unused Deposit. (11 USC § 542)** |
| | Status Conference: <br> DATE:     [To Be Set By Summons] <br> TIME:     [To Be Set By Summons] <br> PLACE:   Courtroom 5A |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1    Plaintiff, MTI Technology Corporation, the above-captioned debtor and debtor in

2  possession, (**"Plaintiff" or "MTI" or "Debtor"**), alleges in its Complaint ("**Complaint**")

3  against defendant EMC Corporation, a Massachusetts corporation (**"Defendant" or**

4  **"EMC"**) as follows:

5                            **JURISDICTION, VENUE AND PARTIES**

6    1.    The Complaint initiates an adversary proceeding as contemplated by Rule

7  7001(1) of the Federal Rules of Bankruptcy Procedure.  All of the Claims for Relief in the

8  Complaint are core proceedings as that term is defined in, without limitation, 28 U.S.C. §§

9  157(b)(2)(A), (B), (C), (E), (F), and (O).

10    2.    By filing a Proof of Claim against the above captioned bankruptcy estate (the

11  "**Estate**"), EMC has waived any right to a jury trial that it may have had.

12    3.    Pursuant to 28 U.S.C. §§ 1334(b), 157(a), General Order No. 266 entered by

13  the US District Court for the Central District of California on October 9, 1984, and

14  157(b)(1), the above entitled court (the "**Court**") has jurisdiction over this adversary

15  proceeding.

16    4.    On October 15, 2007 (the "**Petition Date**"), MTI filed its voluntary petition for

17  relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for

18  the Central District of California, Santa Ana Division, styled In re MTI Technology

19  Corporation, Bankruptcy Case No. 8:07-bk-13347-ES ("MTI's Chapter 11 Case").

20    5.    Pursuant to 28 U.S.C. §1409(a), venue for the prosecution of this adversary

21  proceeding is proper in the above entitled District by virtue of MTI's pending Chapter 11

22  Case.

23    6.    MTI has standing to prosecute and enforce all claims asserted herein

24  belonging to MTI's bankruptcy Estate pursuant to, without limitation, 11 U.S.C. §§

25  541(a)(1), 541(a)(3), 547, 550 and 1107(a).

26  ///

27  ///

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1

**THE PARTIES**

2      7.    Plaintiff is informed and believes, and on that basis alleges, that at all times

3    mentioned herein, Defendant was and is a corporation organized under the laws of the

4    state of Massachusetts.

5       **GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

6      8.    MTI was founded in 1987.  By 2007, Plaintiff was a global provider of

7    infrastructure solutions for the management and storage of electronic data ubiquitous in

8    computers of mid to large size companies.

9      9.    At all times relevant herein, MTI had its headquarters in Orange County,

10   California.

11     10.    For more than 20 years MTI operated its business of delivering high-

12  performance data storage solutions to customers with mid to large scale computer

13  information systems.  For its customers, MTI designed, constructed, and serviced fully

14  integrated solutions for the management, storage, backup, and retrieval of electronic data

15  used in computer systems.

16     11.    MTI purchased from suppliers and resold to its customers specialized data

17  storage equipment.  One of the suppliers from whom MTI purchased such specialized

18  equipment, at times relevant to the Complaint, was EMC.

19     12.    MTI obtained licenses for specialized software from suppliers and sold the

20  software to its customers, who executed the software licenses directly with the supplier.

21  One of the suppliers for whom MTI sold such specialized software, at times relevant to

22  the Complaint, was EMC.

23     13.    Regularly, MTI added value to the resold specialized equipment and the re-

24  sold specialized software by assessing customers' computer data storage system

25  requirements, designing customized configurations for the resold hardware, and

26  providing installation, technical support, and maintenance services to assure that all

27  systems and equipment functioned properly.

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1       14.   In addition to being a buyer of data storage equipment and software from

2   suppliers in the industry, such as EMC, MTI was also a seller of its services, as a

3   subcontractor, to these same entities.  At all times relevant to the Complaint, MTI,

4   including its Division, Collective Technologies, was engaged by EMC as a subcontractor

5   to provide maintenance and repair services to the computer data storage systems of

6   EMC's customers.

7   **FIRST CLAIM FOR RELIEF**

8   **(Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547(b))**

9       15.   Plaintiff realleges and incorporates by this reference each and every

10  allegation set forth in Paragraphs 1 through 14, above, inclusive, as though fully set forth

11  herein at this place.

12      16.   On or within the ninety days prior to the Petition Date, the Debtor made

13  transfers by check, wire transfer or its equivalent in the cumulative amount of at least

14  $5,534,521.78 (the "Transfers"), directly to or for the benefit of Defendant.

15      17.   Defendant was a creditor of the Debtor at the time of the Transfers.

16      18.   The Transfers were made to or for the benefit of the Defendant.

17      19.   The Transfers were made for or on account of antecedent debts owed by the

18  Debtor to the Defendant.

19      20.   The Transfers were of a property interest of the Debtor.

20      21.   The Debtor was insolvent at the time of the Transfers.

21      22.   By reason of the Transfers, the Defendant received more on account of its

22  claims than if the Debtor's case was (A) a case under Chapter 7 of the Bankruptcy Code;

23  (B) the Transfers had not been made; and, (C) the Defendant received payment of such

24  debt to the extent provided by the provisions of the Bankruptcy Code.

25      23.   The Transfers described above may be avoided pursuant to 11 U.S.C.

26  §547(b).

27      24.   Plaintiff is informed and believes, and on that basis alleges subject to

28  Defendant's burden of proof, that during the time Plaintiff was making the Transfers,

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

Defendant provided to Plaintiff a limited amount of "new value," as that term is defined in 11 U.S.C. § 547(c)(4) ("New Value Deliveries"). Subject to Defendant meeting its burden of proof as to the extent of New Value Deliveries, Plaintiff admits that Defendant is entitled to reduce its liability to the Estate for the preferential Transfers by the value of Defendant's New Value Deliveries.

25.    Subject to Defendant meeting its burden of proof, Plaintiff estimates that the total value of Defendant's New Value Deliveries is $1,603,188.28. Also subject to Defendant meeting its burden of proof, Plaintiff alleges that judgment should be entered against Defendant and in favor of Plaintiff for the principal amount of $5,534,521.78 less New Value Deliveries in the amount of $1,603,188.28, for a judgment in the net principal amount of $3,931,333.50. A summary of the Transfers together with estimated "new value credit" is attached hereto as **Exhibit "1"** and it is fully incorporated herein by this reference.

26.    Plaintiff is entitled to recover prejudgment interest on the amount of the judgment that is awarded by the Court upon avoidance of the preferential Transfers. Such prejudgment interest has accrued at the federal legal rate, and it continues to accrue from the date that each Transfer was made until judgment is entered. The accrued interest that should be added to the judgment prayed for herein shall be in excess of $200,000.00, the exact amount according to calculation at the time judgment is entered.

## SECOND CLAIM FOR RELIEF

### (RECOVERY OF PROPERTY – 11 U.S.C. §550)

27.    Plaintiff realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 26, above, inclusive, as though fully set forth herein at this place.

1      28.   Plaintiff is informed and believes and, based upon such information and

2  belief, alleges that the Defendant was the initial transferee of the Transfers, or the entity

3  for whose benefit they were made.

4      29.   Plaintiff is entitled to a judgment that all transfers that are avoided pursuant

5  to this Complaint shall be recovered by Plaintiff for the benefit of the Estate pursuant to

6  11 U.S.C. § 550.  Plaintiff is entitled to have such judgment for the value of each Transfer

7  avoided together with interest thereon at the federal legal rate, accruing from the date

8  each of the avoided Transfers were made and through and including the date judgment is

9  entered.

### THIRD CLAIM FOR RELIEF

### (OBJECTION TO CLAIM REQUESTING DISALLOWANCE OF ALL OR PART OF

### PROOF OF CLAIM NO. 111 FILED BY EMC CORPORATION- 11 USC § 502)

13      30.   Plaintiff realleges and incorporates herein by reference all of the allegations

14  contained in paragraphs 1 through 29, inclusive, of this Complaint, as though each and

15  every allegation had been set forth fully herein.

16      31.   On December 3, 2007, EMC filed with the Court an amended proof of claim

17  in the total amount of $4,829,701.05; such claim was designated by the Court as Claim

18  No. 111 ("**EMC's Claim**").

19      32.   EMC's Claim asserts claims against the Estate for unpaid invoices, which bill

20  MTI for goods and services purportedly provided by EMC to or for the benefit of MTI.

21  EMC attached to its proof of claim a summary that itemizes the invoices which are the

22  subject of EMC's Claim (the "**Invoice Summary**").

23      33.   A portion of EMC's Claim in the specific amount of $323,551.95 is classified

24  as an unsecured priority claim (the "**Priority Portion**").

25      34.   EMC's Claim fails to specify any applicable provision of the Bankruptcy Code

26  as a ground for giving priority classification to the Priority Portion of EMC's Claim.  EMC

27  is required to state such ground at paragraph 6 of the form used for EMC's Claim, and for

28

**CLARKSON, GORE & MARSELLA, APLC**
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  such failure, MTI alleges that the priority classification of the Priority Portion of EMC's

2  Claim should be disallowed.

3      35.    MTI alleges further that the priority classification of the Priority Portion of

4  EMC's Claim should be disallowed on the ground that there is no legal basis for giving

5  priority to such portion of EMC's Claim.

6      36.    MTI is informed and believes, and on that basis alleges that no goods or

7  services were provided to or for the benefit of MTI at MTI's request with respect to the

8  invoice charges comprising the Priority Portion of EMC's Claim.  On the ground stated in

9  this paragraph, MTI asserts that the Priority Portion of EMC's Claim should be disallowed

10  in its entirety.

11     37.    MTI is informed and believes, and on that basis alleges that to the extent any

12  goods or services were actually provided by EMC for the invoice charges comprising the

13  Priority Portion of EMC's Claim, they were provided to third persons or entities, including,

14  but not limited to, some of MTI's prior customers, for EMC's sole benefit with no previous

15  legal obligation to do so.  On the further ground stated in this paragraph, charges for such

16  services are unenforceable, and they should be disallowed in their entirety.

17     38.    MTI is informed and believes, and on that basis alleges that a number of

18  invoice charges that appear in the Invoice Summary do not remain unpaid, but in fact

19  were previously paid by MTI.  (This group of invoices shall hereinafter be referred to as

20  the "**Paid Invoices**.")

21     39.    The total amount of Paid Invoices, which are among the invoices listed in the

22  Invoice Summary and which is included in the calculation of the total amount of EMC's

23  Claim, is in excess of $159,000.00, the exact amount to be determined according to proof

24  at the time of trial.

25     40.    There are a number of invoices listed in the Invoice Summary which the

26  Debtor is unable to locate in its records (the "**Missing Invoices**").

27     41.    MTI is informed and believes, and on that basis alleges that the Missing

28  Invoices might not exist.  To the extent that EMC is unable to produce the Missing

1  Invoices and other underlying documentary evidence of the validity of the charges

2  appearing in the Missing Invoices, MTI objects to the allowance of that portion of EMC's

3  Claim on the ground of there being inadequate evidence thereof.

4      42.   The total amount of the Missing Invoices is in excess of $474,000.00, the

5  exact amount to be determined according to proof at the time of trial.

6      43.   Pursuant to 11 U.S.C. § 502(d), the Court shall disallow any claim of any

7  entity (a) from which property is recoverable under the turnover and preferential setoff

8  provisions of the Bankruptcy Code, or (b) that is a transferee of a transfer avoidable

9  under the avoidance provisions of the Bankruptcy Code unless such entity or transferee

10  has paid the amount, or turned over any such property, for which such entity or

11  transferee is liable.

12      44.   Pursuant to § 502 of the Bankruptcy Code, the allowance or disallowance of

13  claims must be determined by the Court after an objection is made.

14      45.   In this Third Claim For Relief, MTI objects to the whole of EMC's Claim of

15  $4,829,701.05 unless, by the time of the hearing on the disallowance of EMC's Claim,

16  EMC has paid the Estate the full amount of the liability EMC has under 11 U.S.C. §§ 550

17  or 553 for avoidable transfers or 542 for turnover of property of the Estate.  MTI requests

18  the Court to sustain the objections referenced in this paragraph and to enter judgment in

19  favor of MTI and against EMC by disallowing the amount stated herein.

20      46.   In this Third Claim For Relief, MTI also objects to various portions of EMC's

21  Claim.  The aggregate amount requested to be disallowed in the foregoing objections to

22  various portions of EMC's Claim is in excess of $956,500.00.  In the event that the Court

23  does not disallow the entire amount of EMC's Claim as requested in the next preceding

24  paragraph, then MTI requests the Court to sustain the objections referenced in this

25  paragraph and to enter judgment in favor of MTI and against EMC by disallowing the

26  amount stated herein and awarding MTI attorneys fees in an amount according to proof

27  pursuant to ¶ 15.4 of a Reseller Agreement, which governs EMC's Claim.

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

## FOURTH CLAIM FOR RELIEF

### (Breach of Written Contract to Collect Money Due
### on Unpaid Invoices Submitted to EMC by MTI)

47.   Plaintiff realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 46, above, inclusive, as though fully set forth herein at this place.

48.   On or about May 6, 2003, EMC and MTI executed a certain written agreement entitled Master Subcontracting Agreement (the "**MTI Agreement**").  On or about April 10, 2006, EMC and Collective Technologies, LLC, a Delaware limited liability company ("**CTL**"), executed a certain written agreement entitled Master Services Partner Agreement (the "**CTL Agreement**").  MTI is informed and believes, and on that basis alleges, that on or about February 14, 2004, EMC and CTL also, on that earlier date, executed a certain written agreement entitled Master Subcontracting Agreement.  (These two agreements between EMC and CTL shall hereinafter be referred to collectively as the **CTL Agreements**").  In June of 2006, through an Asset Purchase Agreement, MTI became the successor in interest to the CTL Agreements, and MTI absorbed CTL into MTI as a division of its organization.  (The division formed at MTI from the CTL assets shall hereinafter be referred to as the "**Collective Division**").  The Collective Division continued providing services to EMC, and others, under the name Collective Technologies.   (The MTI Agreement and the CTL Agreements shall hereinafter be referred to collectively as the "**Subcontracting Agreements**".)  True and correct copies of the MTI Agreement and the CTL Agreement are attached hereto as **Exhibit "3,"** and they are fully incorporated herein by this reference.

49.   The purpose of the Subcontracting Agreements was for EMC to supplement its computer services manpower with employees of MTI and CTL in order to deliver computer support services to EMC customers.  EMC made assignments to MTI employees to go to the business facilities of EMC's customers, often for an extensive period of months, to engage in the design, installation, management, operations,

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1    maintenance, and repair of the customers' computer and data storage systems.  At times

2    EMC made assignments to MTI employees to move the computer and data storage

3    systems of EMC's customers from one business location to another.  Extensive

4    assignments at customer sites that continued from month to month were referred to as

5    "residencies" by EMC and MTI.

6    50.    During the times relevant to this Complaint, EMC requested subcontracting

7    services from MTI for numerous projects, many of which included residency assignments.

8    In general practice, each separate assignment that EMC made to employ the services of

9    employees of MTI, including the Collective Division, were memorialized by a written

10    Purchase Order ("**PO**") and, in some instances, a written Statement of Work ("**SOW**").

11    51.    MTI fully performed the work requested in each applicable PO and SOW,

12    and it did so in conformance with their terms and the terms of the Subcontracting

13    Agreements.

14    52.    On a regular basis, in accordance with the terms of the Subcontracting

15    Agreements and each applicable PO and SOW, MTI submitted invoices to EMC charging

16    EMC for the subcontracting services that MTI employees, including the Collective

17    Division, performed on behalf of and for the benefit of EMC ("**Subcontracting Invoices**").

18    An itemized summary of substantially all, or all, of said invoices that MTI, in the ordinary

19    course of its business, created, maintained, and submitted to EMC is attached to this

20    Complaint as **Exhibit "2,"** and it is fully incorporated herein by this reference.

21    53.    With rare exception, EMC never communicated to MTI any problem or

22    dissatisfaction with the performance, nature, or quality of the services MTI employees

23    provided to EMC under the Subcontracting Agreements.

24    54.    EMC has failed to reject or object to virtually all of the outstanding and

25    currently unpaid Subcontracting Invoices, and with respect to those outstanding

26    Subcontracting Invoices, EMC did not communicate to MTI any disagreement with the

27    validity of the charges billed to EMC in the outstanding Subcontracting Invoices.

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

55.   EMC materially breached its obligations under the Subcontracting Agreements and the applicable PO's and SOW's by not paying multiple invoices when they came due.

56.   MTI has been damaged by the loss of the value of its services as specified in the Subcontracting Agreements and applicable PO's, SOW's and the Subcontracting Invoices.

57.   As a direct and proximate result of EMC's breach of its obligations under the Subcontracting Agreements and applicable PO's and SOW's, MTI has been damaged in an amount exceeding $2,400,000.00, the exact amount according to proof at the time of trial.

**58.**   MTI has demanded from EMC the payment of said sum, but EMC has failed and refused to remit such payment, and there is now due, owing and unpaid from EMC to MTI for EMC's breach, as described in this Claim for Relief, the approximate amount of $2,400,000.00, the exact amount which shall be proven at the time of trial, plus interest accruing thereon at the maximum legal rate from the date that each of the Subcontracting Invoices came due through the date that judgment is entered on this Complaint.

## FIFTH CLAIM FOR RELIEF

### (Open Book Account to Collect Money Due

### on Unpaid Invoices Submitted to EMC by MTI)

59.   Plaintiff realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 58, above, inclusive, as though fully set forth herein at this place.

60.   Within the last four (4) years EMC became indebted to MTI on an open book account for money due in a total sum exceeding $2,400,000.00, the exact amount according to proof at the time of trial, for Subcontracting Services sold and provided to or for the benefit of EMC and for which EMC agreed to pay.

61.   No part of the above sum has been paid although demand has been made therefor, and there is now due, owing, and unpaid from EMC to the Debtor the total

1   principal amount of approximately $2,400,000.00, the exact amount according to proof,

2   plus pre-judgment interest at the maximum rate permitted by law.

3                              **SIXTH CLAIM FOR RELIEF**

4                         **(Account Stated to Collect Money Due**

5                    **on Unpaid Invoices Submitted to EMC by MTI)**

6        62.   Plaintiff realleges and incorporates by this reference each and every

7   allegation set forth in Paragraphs 1 through 61, above, inclusive, as though fully set forth

8   herein at this place.

9        63.   Within the last four (4) years an account was stated in writing by and

10   between MTI and EMC, whereby it was agreed that EMC was indebted to MTI.

11       64.   The balance thereof presently due and owing, payment of which has not yet

12   been made by EMC, despite the demands of MTI therefor, is an amount in excess of

13   $2,400,000.00, the exact amount according to proof, plus pre-judgment interest thereon

14   at the maximum rate permitted by law.

15

16                              **SEVENTH CLAIM FOR RELIEF**

17                  **(Reasonable Value of Services to Recover Money Due**

18                    **on Unpaid Invoices Submitted to EMC by MTI)**

19       65.   Plaintiff realleges and incorporates by this reference each and every

20   allegation set forth in Paragraphs 1 through 64, above, inclusive, as though fully set forth

21   herein at this place.

22       66.   Within the last two (2) years before the Petition Date, EMC became

23   indebted to MTI for labor, services, travel expenses, lodging expenses, and other related

24   travel expenses rendered at the special request of EMC, and for which EMC promised to

25   pay MTI the reasonable value thereof.

26       67.   The balance thereof presently due and owing, payment of which has not yet

27   been made by EMC, despite the demands of MTI therefor is an amount exceeding

28   $2,400,000.00, plus pre-judgment interest thereon at the maximum rate permitted by law.

**CLARKSON, GORE & MARSELLA, APLC**
Attorneys At Law
Torrance, California

## EIGHTH CLAIM FOR RELIEF

### (Breach of Written and Oral Finder's Fee Agreement)

68.    Plaintiff realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 67, above, inclusive, as though fully set forth herein at this place.

69.    During the course of dealing between EMC and MTI over several years before MTI filed its Chapter 11 bankruptcy petition, MTI acted as a reseller of computer equipment manufactured or distributed by EMC and of other goods and services.

70.    MTI sold such equipment to its customers.  MTI developed information systems solutions for its customers, and it designed, installed and maintained computing and electronic data storage infrastructures for them.  Additionally, MTI provided its customers with secure data backup systems and solutions, as well as the recovery of such data in disaster and other situations.

71.    In the course of dealing between MTI and EMC for several years before the Petition Date, when MTI initiated the purchase of computer equipment from EMC to resell it to one of MTI's customers, MTI submitted a purchase order to EMC.

72.    In September of 2007, when EMC perceived that MTI was having financial difficulty, EMC stopped accepting pending purchase orders and refused to fill the pending orders.  Instead, EMC insisted that it would sell directly to MTI's customers the computer equipment requested in MTI's pending purchase orders.

73.    In exchange for MTI having arranged for its customers to purchase EMC computer equipment, EMC agreed to pay, and acknowledged in writing indebtedness for paying, certain "finder's fees" ("Finder's Fees").  True and correct copies of some written communications from EMC to MTI in which EMC acknowledged said indebtedness are attached hereto as **Exhibit "4,"** and they are fully incorporated herein by this reference.

74.    MTI is informed and believes, and on that basis alleges that the aggregate amount of Finder's Fees due, owing and unpaid from EMC to MTI exceeds $400,000.00.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

75.    MTI is informed and believes, and on that basis alleges that EMC made follow-on sales of equipment to MTI's customers, and EMC is indebted to MTI for Finder's Fees for additional and follow-on sales EMC made to MTI's customers in and after September of 2007.

76.    Records and information regarding all sales of equipment and services by EMC to MTI's customers and former customers in and after September of 2007 are in the control of EMC, and MTI is entitled to a FULL ACCOUNTING OF THE SALES AND THE FINDER'S FEES DUE ON SUCH SALES.  MTI prays that the Court order EMC to provide MTI with said accounting of sales and finder's fees on a provisional basis during the pretrial phase of this adversary proceeding.

77.    With respect to computer equipment EMC sold to MTI's customers in September of 2007 and afterwards, EMC has paid none of the Finder's Fees owed, and there remains due, owing and unpaid from EMC to MTI Finder's Fees in an aggregate amount significantly in excess of $400,000.00, the exact amount according to proof.

### NINTH CLAIM FOR RELIEF

**(Quanum Meruit to disgorge Unjust Enrichment obtained by EMC through the Unhooking of MTI's Purchase Orders and the Taking of MTI's Customers Without Paying Finder's Fees As Promised)**

78.    Plaintiff realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 77, above, inclusive, as though fully set forth herein at this place.

79.    In September of 2007, EMC cancelled pending purchase orders from MTI for the purchase of equipment that MTI previously arranged to resell to its customers (the "**Cancelled PO's**").

80.    EMC demanded that MTI refer its customers, who were the end users of the equipment ordered in the Cancelled PO's, to EMC for EMC to sell the subject equipment directly to MTI's customers.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

81.    In arranging sales to MTI's customers of the equipment ordered in the Cancelled PO's, MTI performed a material amount of work for its customers in terms of investigating its customers' unique computer system and data storage needs and designing solutions and architectural infrastructure to fulfill its customers' computer needs.

82.    To induce MTI to acquiesce in EMC's demand to convert the orders that MTI's customers placed with MTI into direct orders from MTI's customers to EMC, EMC promised to pay MTI a reasonable value for the background and sales work of the MTI sales force and for their cooperation in getting MTI's customers to order the subject equipment directly from EMC.  EMC referred to said reasonable value payments as "finder's fees" (hereinafter the "Finder's Fees").

83.    In September, October and November of 2007, MTI cooperated with EMC's demand to have all the MTI customers', for whom equipment was ordered in the Cancelled PO's, buy their equipment directly from EMC.

84.    EMC made profitable sales of equipment to MTI's customers in September of 2007 and thereafter, and EMC made no Finder's Fee payment to MTI whatsoever in consideration thereof.

85.    Based on the course of conduct of MTI and EMC as it relates to the circumstances related to the Finder's Fees, and based upon the personal understanding between EMC and MTI, EMC voluntarily accepted consideration with expectation on both EMC and MTI's parts that EMC would receive benefit for MTI's actions and EMC would compensate MTI for the benefits MTI's actions conferred upon EMC.

86.    The foregoing promise of EMC made to MTI and the foregoing circumstances, as described above in this Claim For Relief, constitute a contract implied in fact, and such promise and circumstances should be deemed by the Court to constitute a contract implied by law in order to prevent EMC from being unjustly enriched.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

87.   Based on the doctrines of Quantum Meruit and Unjust Enrichment, EMC is indebted to MTI to pay Finders Fees of an amount exceeding $400,000.00, the exact amount according to proof at the time of trial.

**TENTH CLAIM FOR RELIEF**

**(Money Had and Received - Specifically Prepaid**

**Funds of MTI Held by EMC as an Unused Deposit.)**

88.   Plaintiff realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 87, above, inclusive, as though fully set forth herein at this place.

89.   At all times relevant to this Complaint, MTI purchased computer data storage equipment from EMC, and MTI resold the equipment to MTI's customers (the "**Data Storage Equipment**").

90.   At all times relevant to this Complaint, MTI regularly sold to its customers along with the Data Storage Equipment technical support and maintenance services to be performed by MTI's employees on its customers' computer and data storage systems.

91.   At all times relevant to this Complaint, It was customary for MTI and other providers of technical support in the same industry to classify technical support problems and work into three levels, with level one being the least complex and challenging, and level three being the most complex and challenging.

92.   During the course of dealings between MTI and EMC over several years before MTI filed its Chapter 11 bankruptcy petition, MTI periodically purchased backup Level Three technical support services from EMC to be performed on the Data Storage Equipment.  ("**L3 Support Backup**").

93.   At all times relevant to this Complaint, on regular occasion, upon selling technical support to its customers, MTI paid EMC for L3 Support Backup in advance for periods of time ranging from one to three years, or more.

1    94.    Upon prepayment of funds to EMC for future L3 Support Backup, MTI

2  reflected this prepaid expense in its accounting records as a credit to be drawn down as

3  future L3 Support Backup expenses are incurred.

4    95.    Upon receipt of prepaid funds for L3 Support Backup, EMC's accounting

5  records, according to Generally Accepted Accounting Principles, should have reflected in

6  its books and records a liability to MTI until MTI incurred the expense for L3 Support

7  Backup and the income was actually earned by EMC.  In effect, the funds held by EMC

8  for future services to be rendered to MTI, were held by EMC as an advance deposit.

9    96.    As of October 15, 2007, the date on which MTI filed its Chapter 11

10  bankruptcy petition, EMC was holding **$633,167.00** as an advance deposit for future L3

11  Support Backup services (the "**Unused Deposit**").

12    97.    The Unused Deposit was not used, and because MTI has ceased

13  operations, it will never be used.

14    98.    On the Petition Date, the Unused Deposit became property of the Estate

15  pursuant to §541(a)(1) of the Bankruptcy Code.

16    99.    Pursuant to 11 U.S.C. § 542, EMC should turnover the Unused Deposit to

17  the Estate forthwith.

18    100.    Within two years prior to the Petition Date, EMC became indebted to MTI for

19  monies had and received (namely the Unused Deposit) by EMC, or for its benefit, in the

20  aggregate unpaid amount of $**633,167.00**.

21    101.    Neither the whole nor any part of this sum has been paid or returned to the

22  Debtor, and all such sums are now due, owing and unpaid from EMC to the Debtor,

23  together with interest thereon at the maximum legal rate from the Petition Date until

24  judgment is entered in this Adversary Proceeding.

25  ///

26  ///

27  ///

28  ///

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

## ELEVENTH CLAIM FOR RELIEF

### (Turnover of Property of the Estate) (11 USC § 542))

102.   Plaintiff realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 101, above, inclusive, as though fully set forth herein at this place.

103.   All causes of action held by the Debtor on the Petition Date, including, but not limited to, the Claims for Relief set forth above in This Complaint and all monies recoverable on those causes of action are property of the Estate under 11 U.S.C. § 541(a)(1).

104. EMC is in possession, custody or control, during this bankruptcy case, of said property that the Debtor may use, sell or lease under Bankruptcy Code Section 363 or distribute to creditors, and such property is not of inconsequential value or benefit to the Estate.

105.   The Debtor is entitled to a judgment directing EMC to turnover to the Debtor, as property of the Estate, all of the monies due on the Claims for Relief set forth in this Complaint, including, but not limited to, the Unused Deposit, unpaid Finder's Fees, unpaid account receivables due from EMC, which is the aggregate amount due on the Subcontracting Invoices, and the amount recoverable on avoidable preferential transfers.

## TWELFTH CLAIM FOR RELIEF

### (For Preservation of Each of the Avoided Transfers Pursuant to 11 U.S.C. § 551)

106.  Plaintiff realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 105, above, inclusive, as though fully set forth herein at this place

107.   The Plaintiff is entitled to a judgment that all transfers that are avoided pursuant to this Complaint shall be preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551.

///

///

WHEREFORE, the Plaintiff prays for relief as follows:

## ON THE FIRST AND SECOND CLAIMS FOR RELIEF

For judgment to be entered against EMC and in favor of Debtor as follows:

1. The Transfers, and each of them, are avoided as preferential transfers under 11 U.S.C. § 547.

2. Debtor shall recover from EMC the total amount of $5,534,521.78 or more, the exact amount being fixed according to proof.

3. EMC shall receive a credit on said recovery for the amount of New Value Deliveries that EMC is able to prove, the estimated amount of said credit, which will reduce the foregoing recovery, is $1,603,188.28.


## ON THE THIRD CLAIM FOR RELIEF

For judgment to be entered against EMC and in favor of Debtor as follows:

4. MTI's objection to the priority classification of the Priority Portion of EMC's Claim is sustained, and the priority classification of the Priority Portion of EMC's claim is denied.

5. MTI's objection to the validity and enforceability of the Priority Portion of EMC's Claim is sustained, and the Priority Portion of EMC's Claim in the amount of $323,551.95 is denied.

6. MTI's objection to that portion of EMC's Claim that charges approximately, and no less than, $159,000.00 for the Paid Invoices is sustained, and that additional amount of EMC's Claim is denied.

7. MTI's objection to that portion of EMC's Claim that charges approximately, and no less than, $474,000.00 for the Missing Invoices is sustained, and that additional amount of EMC's Claim is denied.

8. MTI's objection to the entirety of EMC's Claim that remains after the disallowance of the foregoing portions of EMC's Claim in the aggregate of approximately $956,552.00 is sustained.  Subject to proof, $956,552.00, as prayed above, shall be

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  disallowed without condition, and $4,829,701.05 less 956,552.00 shall be disallowed on

2  the condition that prior to the hearing on the allowance or disallowance of EMC's Claim,

3  EMC failed to pay the Estate the full amount of its liability for avoidable transfers and its

4  failure to pay the value of property of the Estate required to be turned over to the Estate,

5  which liability is in the aggregate amount of approximately $7,200,000.00.

6       9.    Attorneys fees incurred by Debtor litigating the merits of EMC's Claim.

7  **ON THE FOURTH THROUGH SEVENTH CLAIMS FOR RELIEF**

8       For judgment to be entered against EMC and in favor of Debtor as follows:

9       10.    Debtor shall recover from EMC the total amount due, unpaid and owing on

10  the Subcontracting Invoices in the total principal amount of $2,400,000.00 or more,

11  according to proof at trial.

12       11.    Debtor shall also recover from EMC interest accruing on the principal

13  amount of $2,400,000.00 at the maximum legal rate from the date that each of the

14  Subcontracting Invoices came due through the date that judgment is entered on this

15  Complaint.

16  **ON THE EIGHTH AND NINTH CLAIMS FOR RELIEF**

17       For judgment to be entered against EMC and in favor of Debtor as follows:

18       12.    Debtor shall recover from EMC the total amount due, unpaid and owing for

19  Finder's Fees in the total principal amount of $400,000.00 or more, according to proof at

20  trial.

21       13.    Debtor shall also recover from EMC interest accruing on the principal

22  amount of $400,000.00 at the maximum legal rate from the date that each of the

23  Subcontracting Invoices came due through the date that judgment is entered on this

24  Complaint.

25       14.    EMC shall provide Debtor with an accounting of all sales of equipment and

26  accessories it made directly to MTI's customers in September of 2007 and thereafter

27  together with an accounting of "finder's fees" EMC customarily paid on similar sales

28  arranged by sales agents in the industry.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

## ON THE TENTH CLAIM FOR RELIEF

For judgment to be entered against EMC and in favor of Debtor as follows:

15.    Debtor shall recover from EMC the total amount due, unpaid and owing for return of the Unused Deposit in the total principal amount of $633,167.00 or more, according to proof at trial.

16.    Debtor shall also recover from EMC interest accruing on the principal amount of $633,167.00 at the maximum legal rate from and after the Petition Date through the date that judgment is entered on this Complaint.

## ON THE ELEVENTH CLAIM FOR RELIEF

For judgment to be entered against EMC and in favor of Debtor as follows:

17.    Debtor shall recover from EMC the total amount due, owing and unpaid on each of the Claims for Relief set forth in this Complaint in the total principal amount of approximately $7,200,000.00 or more, the exact amount according to proof at trial.

18.    Debtor shall also recover from EMC interest accruing on the principal amount of approximately $7,200,000.00, with the precise amount according to proof at the time of trial, at the maximum legal rate from and after the date each amount came due on each Claim for Relief through the date that judgment is entered on this Complaint.

## ON THE TWELFTH CLAIM FOR RELIEF

For a declaratory judgment decreeing that all transfers that are avoided and all property ordered to be turned over to the Estate pursuant to this Complaint shall be preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551.

## ON ALL CLAIMS FOR RELIEF

For costs of suit incurred herein, including, without limitation, attorneys' fees with respect to the Third Claim for Relief, and for such other and further relief as the Court deems just and proper.

///

1   DATED: _March 31_, 2009     **Clarkson, Gore & Marsella, APLC**

2

3                       By: _____

4                          Israel Saperstein, Esq.

                           Scott C. Clarkson, Esq.

5                          Eve A. Marsella, Esq.

                           Attorneys for Plaintiff, Debtor and Debtor in

6                          Possession, MTI Technology Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLARKSON, GORE & MARSELLA, APLC**
Attorneys At Law
Torrance, California